584 F.2d 931
 PURSE SEINE VESSEL OWNERS ASSOCIATION, Puget Sound
Gillnetters Association, Frank Marinkovich, Philip
Sutherland, and Wallace K. Green,
Plaintiffs- Appellants,
v.
UNITED STATES DEPARTMENT OF STATE, the National Oceanic and
Atmospheric Administration, the National Marine Fisheries
Service, the United States Coast Guard, the United States
Department of the Interior, and the Bureau of Indian
Affairs, Defendants-Appellees.
 No. 77-2968.
 United States Court of Appeals,
Ninth Circuit.
 Oct. 26, 1978.
 
 Joseph T. Mijich (argued), Charles E. Yates (argued), Seattle, Wash., for plaintiffs-appellants.
 Kathryn A. Oberly, Atty. (argued), of Dept. of Justice, Washington, D. C., Mason Morisset (argued), Seattle, Wash., for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington at Seattle.
 Before HUFSTEDLER, WRIGHT and KENNEDY, Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellants, non-Indian commercial salmon fishermen in the State of Washington, brought this suit for declaratory and injunctive relief to enjoin the State Department and other members of the Executive Branch from exempting treaty Indians from the salmon fishing regulations promulgated by the International Pacific Salmon Fisheries Commission ("Commission") and from promulgating their own regulations controlling treaty Indians' fishing opportunities. The district court denied appellants' motions for preliminary injunctions, and this appeal followed.
 
 
 2
 The judicial genesis of this long-standing controversy between the non-Indian salmon fishermen and the fishermen of certain tribes of Indians in the Pacific Northwest is the decree in United States v. Washington (W.D.Wash.1974) 384 F.Supp. 312, Affirmed (9th Cir. 1975) 520 F.2d 676. The decree in that case mandated that treaty Indians should have an opportunity to take one-half of the salmon catch available to United States fishermen.
 
 
 3
 Two events ignited this particular controversy: (1) The State Department exempted treaty Indians from the regulations promulgated by the Commission by means of approving the Commission regulations only insofar as they applied to non-Indian fishermen, and (2) the Commission attempted to assert control over treaty Indian fishing by adopting regulations expressly to include treaty Indians.
 
 
 4
 Appellants' basic contention is that the United States misconstrued a treaty between the United States and Canada affecting the management of the sockeye and pink salmon fishery of the Fraser River System and that exempting treaty Indians from the regulatory powers of the Commission impaired the terms of the same treaty. We conclude that the district court did not abuse its discretion in denying relief to the appellants.
 
 
 5
 In 1937, the United States and Canada agreed to a Convention "for the protection, preservation, and extension of the sockeye salmon fishery of the Fraser River System." (50 Stat. 1355.) In 1957, the Convention was amended by protocol to include pink salmon as well as sockeye salmon. (8 U.S.T. 1058.) The convention established the Commission, consisting of three American and three Canadian Commissioners authorized to supervise the fishery and implement the Convention's twin goals: sufficient escapement of the salmon each year to assure the perpetuation of the race and an equal division of the harvestable catch between Canadian and American fishermen. The Commission annually proposes regulations governing the time and the manner in which pink and sockeye salmon may be taken by the fishermen of each country. With two exceptions, later discussed, the Commission's proposed regulations do not become effective until they are approved by the governments of both countries.
 
 
 6
 The Convention has been fully implemented by domestic legislation (16 U.S.C. §§ 776 Et seq.), which directs the President to designate a federal agency to enforce the Convention, the regulations of the Commission, and the implementing acts. Under 16 U.S.C. § 776d(a), the President designated the National Marine Fisheries Service, a sub-agency of the National Oceanic and Atmospheric Administration of the Department of Commerce, to enforce the provisions of the Convention and the regulations and orders of the Commission.
 
 
 7
 The Commission's regulations ordinarily set open periods for Canadian fishermen in Canadian Convention waters and, by separate regulatory provisions, for American fishermen operating in Convention waters of the United States. The regulations also limit the use of particular kinds of equipment (such as purse seines, gillnets, or reef nets) to certain specified dates.
 
 
 8
 Before the 1977 salmon fishing season, the State Department implemented the decree in United States v. Washington, supra, by submitting to the Canadian government a proposal for the 1977 Commission regulations allowing the treaty Indian fishermen to fish for longer periods than other American fishermen. Treaty Indians are fewer in number and possess less sophisticated equipment than non-Indians. In order to provide the treaty Indians with "an opportunity to catch one-half of all the fish which, absent the fishing activities of other citizens, would pass their traditional fishing grounds" (520 F.2d at 688), the State Department decided that the Indians should have a somewhat longer time within which to fish than was allowed other American fishermen. In March, 1977, the United States secured the Canadian government's agreement to a proposal that for the 1977 season, treaty Indians would be provided extra fishing time. However, the Commission refused to accept the decision of the two governments. Instead, on June 1, 1977, the Commission adopted the recommendation of a two-day per week fishery for all American fishermen, with no provision for the Indians' treaty rights.
 
 
 9
 The Department of State was aware that the Commission might be recalcitrant, and anticipating this possibility, on May 26, 1977, the State Department advised the government of Canada that the United States would consider achieving the same result contemplated by the government-to-government agreement through the exercise of its authority under Article VI of the Convention, as amended, to approve the Commission's proposed 1977 regulations only as applied to non-Indians. Treaty Indian fishing, accordingly, would be governed by separate federal regulations providing the Indians with extra fishing time, rather than by regulations promulgated by the Commission and approved by both governments.
 
 
 10
 Canada did not object to the State Department's means for implementing the regulation of Indian fishing. Canada did stress the importance of regulating any special Indian fishery adopted by the United States "in a manner consistent with the objectives of the Convention and the rights and obligations of the parties thereunder."[1]
 
 
 11
 On June 1, 1977, the Commission forwarded to the Department of State its proposed 1977 regulations for approval. On June 17, 1977, the State Department approved the proposed regulations "except as to U.S. Indians who are entitled to exercise fishing rights by virtue of treaties with the United States in U.S. Convention waters and are fishing in accordance with Federal regulations providing for the exercise of such fishing rights." The State Department advised both Canada and the Commission of its decision.
 
 
 12
 On June 21, 1977, the Department of the Interior, pursuant to its authority over Indian affairs (25 U.S.C. §§ 2, 9), published regulations for treaty Indians fishing in Convention waters. (42 Fed.Reg. 31450.) The Interior Department's regulations tracked those of the Commission, but they allowed the Indians to fish for a longer period each week than the rest of the American fleet. The regulatory scheme promulgated by the Interior Department was expected to provide the treaty Indians with an opportunity to catch about 10 to 15 percent of the catch available to the United States. Evidence introduced at the time of the hearing on the preliminary injunction indicated that the treaty Indians were able to catch about 20 percent of the American share.
 
 
 13
 On June 27, 1977, in defiance of the State Department directives, the Commission purported to adopt an "emergency order" stating that its June 1, 1977, regulations for American Convention waters applied to all citizens, without exception. The Commission also sent a letter to the Department of State challenging the legal power of the United States to exclude treaty Indians from Commission coverage. The non-Indian fishermen then brought this suit to compel the United States to apply the Commission regulations to treaty Indians.
 
 
 14
 The parties have raised a series of complex issues concerning the justiciability of the controversy under the political question doctrine, based upon the traditional judicial unwillingness to intrude into foreign relations matters the appropriate scope of judicial review of executive discretion in interpreting treaties, and the appropriate limitations upon the use of equitable relief as a means of avoiding potential criminal liability. Despite the procedural cloth in which this proceeding is garbed, the real attack is upon the decree in United States v. Washington, supra. The interpretation and effect of the decree in United States v. Washington are issues which are presently pending before the United States Supreme Court.[2] Under these circumstances, it would be inappropriate for us further to pursue the issues. It is enough to dispose of this appeal to decide that, under the existing law of the Circuit, the district court did not abuse its broad discretion in denying injunctive relief to the non-Indian fishermen. (Cf. Jensen v. National Marine Fisheries Service (9th Cir. 1975) 512 F.2d 1189.)
 
 
 15
 AFFIRMED. Mandate shall issue forthwith.
 
 
 
 [1]
 Non-protest by the Canadian government is consistent with Canada's own practice in regulating subsistence fishing by its own Indians. Canada has always excluded its Indian fishing from Commission coverage. Canadian Indian subsistence fishing has grown over the years, and in the last year counted, Canadian Indians caught approximately 300,000 fish. American Indian fishermen, both commercial and subsistence, during the same period caught a total of 80,000 fish
 
 
 [2]
 Washington v. United States Cert. granted (1978) --- U.S. ---, 99 S.Ct. 277, 58 L.Ed.2d 255; Puget Sound Gillnetters Assoc. v. U. S. D. C. Cert. granted (1978) --- U.S. ---, 99 S.Ct. 277, 58 L.Ed.2d 255; consolidated with Washington v. Washington State Commercial Passenger Fishing Vessel Assoc. (1978) --- U.S. ---, 99 S.Ct. 276, 58 L.Ed.2d 255